**PUBLIC VERSION**

██████████████████████████████████████

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| Q TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> WALMART INC., <br><br> Defendant. | Case No. 6:21-cv-0779-ADA <br><br> **JURY TRIAL DEMANDED** <br><br> **ORAL ARGUMENT REQUESTED** <br><br> ████████████████ |

**DEFENDANT WALMART INC.'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT OF PATENT INELIGIBILITY
<u>PURSUANT TO 35 U.S.C. SECTION 101</u>**

**TABLE OF CONTENTS**

Page

I. THE CLAIMS ALL FAIL FOR THE SAME REASON UNDER ALICE ....................... 1

II. Q TECH FAILS TO IDENTIFY ANY CLAIM LIMITATION WALMART
SUPPOSEDLY IGNORES IN ITS ANALYSIS ................................................................ 2

III. Q TECH MISCHARACTERIZES THE LAW ................................................................. 3

IV. Q TECH FAILS TO IDENTIFY ANY TECHNOLOGICAL IMPROVEMENT
IN THE CLAIMS ................................................................................................................ 5

V. Q TECH FAILS TO REBUT THAT CONTENT-SHARING USING A UNIQUE
IDENTIFIER IS A KNOWN ABSTRACT CONCEPT ...................................................... 8

VI. CONCLUSORY EXPERT OPINION AND THIRD-PARTY EVIDENCE
CANNOT SAVE Q TECH'S CLAIMS .............................................................................. 9

VII. THE ASSERTED CLAIMS FAIL BOTH STEPS OF ALICE AND ARE
PATENT INELIGIBLE UNDER SECTION 101 ............................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*ADASA Inc. V. Avery Dennison Corp.*,
 55 F.4th 900 (Fed. Cir. 2022) ................................................................................................. 2

*Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*,
 967 F.3d 1285 (Fed. Cir. 2020) ....................................................................................... 2, 6, 7

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
 841 F.3d 1288 (Fed. Cir. 2016) ............................................................................................ 4, 5

*Blue Spike, LLC v. Audible Magic Corp.*,
 No. 6:15-CV-584, 2016 WL 3653516 (E.D. Tex. May 31, 2016) ........................................... 6

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
 927 F.3d 1306 (Fed. Cir. 2019) ............................................................................................ 4, 5

*Customedia Techs., LLC v. Dish Network Corp.*,
 951 F.3d 1359 (Fed. Cir. 2020) ............................................................................................... 7

*eCeipt LLC v. Homegoods, Inc.*,
 No. 19-CV-32-ADA, 2019 WL 10302271 (W.D. Tex. May 20, 2019) ................................... 5

*Elec. Power Grp., LLC v. Alstom S.A.*,
 830 F.3d 1350 (Fed. Cir. 2016) ............................................................................................... 4

*Enfish, LLC v. Microsoft Corp.*,
 822 F.3d 1327 (Fed. Cir. 2016) ...................................................................................... 2, 3, 4

*Gree Inc. v. Supercell Oy*,
 2020 U.S. Dist. LEXIS 33076 (E.D. Tex. Jan. 20, 2020) ....................................................... 4

*K-TEC, Inc. v. Vita-Mix Corp.*,
 696 F.3d 1364 (Fed. Cir. 2012) ............................................................................................. 10

*Luminati Networks Ltd. v. Code200, UAB*,
 2021 U.S. Dist. LEXIS 24742 (E.D. Tex. Feb. 9, 2021) ........................................................ 2

*Mobile Equity Corp. v. Walmart Inc.*,
 2022 U.S. Dist. LEXIS 176074 (E.D. Tex. Sept. 8, 2022) ...................................................... 3

*PersonalWeb Techs LLC v. Google LLC*,
 8 F.4th 1310 (Fed. Cir. 2021) ......................................................................................... 3, 4, 5

Case 6:21-cv-00779-ADA   Document 146   Filed 07/19/23   Page 4 of 16
PUBLIC VERSION

*Reputation.com v. Birdeye*,
  2022 WL 609161 (D. Del. Jan 31, 2022)..................................................................................10

*SAP AM., Inc. v. InvestPic, LLC*,
  898 F.3d 1161 (Fed. Cir. 2018)...............................................................................................5

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
  873 F.3d 905 (Fed. Cir. 2017)............................................................................................3, 4

*Uniloc USA, Inc. v. LG Elecs. USA, Inc.*,
  957 F.3d 1303 (Fed. Cir. 2020)...............................................................................................2

*Universal Secure Registry v. Apple Inc.*,
  10 F.4th 1342 (Fed. Cir. 2021) ...............................................................................................5

*USC IP v. Facebook, Inc.*,
  576 F.Supp.3d 446 (W.D. Tex. Dec. 20, 2021 (Albright, J.)..................................................10

Active/1601296017

Q Tech attempts to muddy the waters by first complaining that Walmart "reads out" key limitations of the Asserted Claims that render them patent-eligible. But then Q Tech fails to identify these limitations. Instead, Q Tech relies on attorney-manufactured "problems" and "solutions" that appear nowhere in the Asserted Claims and are wholly unsupported by the Asserted Patents. At no point is Q Tech able to tether specific claim language reciting a technical improvement to any purported problem or solution, as is required under *Alice* and its progeny.

Q Tech's response concedes many of the arguments made by Walmart in its original Motion. First, Q Tech does not dispute that patent ineligibility may be determined at summary judgment. ECF No. 117 at 9-10 (§ IV). Second, Q Tech concedes that the patentee admits that the purported "inventive concept" of the Asserted Claims was already known. *Id*. at 6-7 (§ III.B). Third, Q Tech does not dispute that the claimed steps recite generic functional language. *Id*. at 26-27 (§ VI.B). Fourth, Q Tech concedes that the Asserted Claims recite conventional tools and identifies no specific technical structure in the claims beyond the generic structure previously identified in Walmart's Motion. *Id*. at 24-26 (§ VI.A.). Fifth, Q Tech does not rebut the binding admissions identified by Walmart. *Id*. at 28-29 (§ VII). Finally, Q Tech cites no case law that conclusory and unsupported expert opinion can create a genuine issue of material fact. *Id*. at 29-33 (§ VIII). Walmart's Motion should be granted.

I.      THE CLAIMS ALL FAIL FOR THE SAME REASON UNDER *ALICE*

Q Tech asserts that Walmart overgeneralizes the claims at issue. But Q Tech concedes that the only difference between the '473 and '774 patents and the '108 patent is the "software package" limitation. ECF No. 125 at 16-17. Q Tech does not explain how the "software package" limitation—or any other limitation—presents a meaningful difference between claim 1 of the '108 patent and any other claim. Thus, all of the Asserted Claims can be analyzed together, and fail

1

under *Alice* for the exact same reason.[1] *See* ECF No. 117 at 5-6 (§ III.A.).

## II.   Q TECH FAILS TO IDENTIFY ANY CLAIM LIMITATION WALMART SUPPOSEDLY IGNORES IN ITS ANALYSIS

Although Q Tech references *Alice* step 1, nowhere does Q Tech argue that the concept of content sharing using a unique identifier is more than an abstract concept itself. ECF No. 125 at 2. Q Tech implicitly acknowledges this failing, instead arguing that the claims are "laser focused" on specific improvements (pertinent to *Alice* step 2) and complaining that Walmart "reads out" and "ignores" these improvements. ECF No. 125 at 2, 6. Despite this laser focus, Q Tech fails to identify a single limitation which Walmart has allegedly "read out" or "ignored" – and indeed it cannot, because there is no specific claim language tethered to Q Tech's supposed "inventive concept."  Q Tech's reliance on *Luminati* is misplaced. *Luminati* criticized a defendant who ignored "particular steps in the claim." *Luminati Networks Ltd. v. Code200, UAB*, 2021 U.S. Dist. LEXIS 24742, *14 (E.D. Tex. Feb. 9, 2021). Here, the Asserted Claims simply do not claim this manufactured digital-content "flow" that is supposedly the "inventive concept." *See Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 967 F.3d 1285, 1292 (Fed. Cir. 2020) ("features that are not claimed are irrelevant as to step 1 or step 2 of the Mayo/Alice analysis."). It is impossible to "ignore" limitations that do not exist.

Q Tech also cites *ADASA*[2] in support of its proposition that Walmart has somehow ignored key aspects of the Asserted Claims in. ECF No. 125 at 7. But, in *ADASA*, the Federal Circuit held that the asserted claim was "directed to a specific, hardware-based RFID serial number data structure" and therefore comparable to the claims in *Uniloc* and *Enfish*.[3] *Id.* The Asserted Claims

---

[1] The Asserted Claims include claims 1 and 10 of the '108 patent; claims 14 and 16 of the '473 patent; and claims 1, 3, 4, and 14 of the '774 patent.
[2] *ADASA Inc. V. Avery Dennison Corp.*, 55 F.4th 900 (Fed. Cir. 2022).
[3] *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1307 (Fed. Cir. 2020) (holding eligible claims appending an additional data field to a prior art data structure used for polling stations in a

2

here do not recite "hardware-based data structure" – or *any* data structure – that promotes "improvements to the technological process...." *Id*. Q Tech's cursory citation to *DDR Holdings* fails to address Walmart's detailed analysis about why that authority is inapplicable here. *Compare* ECF No. 125 at 8, *with* ECF No. 117 at 20-23 (§ V.C.). Although Walmart agrees that the claims must be considered as a whole, the only limitations that should be considered are those that actually exist, not those added through attorney argument.

### III.   Q TECH MISCHARACTERIZES THE LAW

Contrary to Q Tech's argument, *MEC* is non-binding authority and is not analogous to the facts here. In *MEC*, the court was able to identify the technical problem and the technical solution because both were explicitly identified in the MEC patents. *Mobile Equity Corp. v. Walmart Inc.* ("*MEC*"), 2022 U.S. Dist. LEXIS 176074, *12-15 (E.D. Tex. Sept. 8, 2022). In contrast, here, Q Tech has not identified any specific improvement in computer technology, supported by either the claims or patent specification. ECF No. 125 at 21. Unlike Q Tech's arguments, the *MEC* opinion focused on the actual claim language. *See MEC* at *17-18. In attempting to analogize the Asserted Patents to those of MEC, Q Tech directly contradicts its own technical expert. Dr. Brogioli asserted that ▮

▮ Ex. 1 (Brogioli Rpt.) at ¶ 437.

Q Tech also attempts to distinguish *Secured Mail*, *Bridge & Post*, and *PersonalWeb* by stating that "the patented solution is a specific and unconventional alteration to the transactional flow of information within a specific computer architecture," or some variation thereof. ECF No.

---

communication system); *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1339 (Fed. Cir. 2016) (holding eligible claims related to a "specific type of [self-referential] data structure designed to improve the way a computer stores and retrieves memory.").

125 at 23-24. But such conclusory statements do not meaningfully distinguish the cases. As Walmart explained, Q Tech's purportedly unconventional flow is analogous to the subject matter that the Federal Circuit has already found ineligible on at least three separate occasions. ECF No. 117 at 15-19 (§ V.B.). Indeed, just a few paragraphs earlier in its Opposition, Q Tech states that its claimed process "is directed to digital communication without the need for disclosing personal information." ECF No. 125 at 22. This is nearly identical to *PersonalWeb*, where the claims were directed to "using a content-based identifier" (i.e., no personal information), "comparing that content-based identifier against something else," and providing or denying access to data (i.e., "digital communication"). *PersonalWeb Techs LLC v. Google LLC,* 8 F.4th 1310, 1315 (Fed. Cir. 2021); *see also Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 909 (Fed. Cir. 2017) (ineligible patents "directed to the abstract idea of communicating information about a [mail object] by use of a marking.").

Q Tech's reliance on *Enfish*, *Eceipt*, *Gree*, *Amdocs,* and *Cellspin* is misplaced. Walmart does not argue, as Q Tech contends, that "the claims are ineligible because general purpose computers may be used to implement the claims"; nor does Walmart's analysis "cling[] to the belief that ineligibility turns on whether the claims can be implemented on conventional computers." ECF No. 125 at 25, 29. Thus, *Gree* is inapplicable. *Gree Inc. v. Supercell Oy*, 2020 U.S. Dist. LEXIS 33076, *10 (E.D. Tex. Jan. 20, 2020) (denying *motion to dismiss* because "software improvements can be a [patent eligible] if done by a specific technique that departs from earlier approaches to solve a specific computer problem") (quotation omitted)). Here, the focus of the Asserted Claims is not on "an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools." *See Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016). Nor do the Asserted Claims "implement[] a well-known technique with

4

particular devices in a specific combination...” or in a “specific structure.” *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1310-11 (Fed. Cir. 2019); *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1301 (Fed. Cir. 2016). The claims here are ineligible because the only technology recited *within the claim itself* is generic structure, which is insufficient to save the rest of the claim (the abstract idea of content-sharing using a unique identifier) from ineligibility. *See* ECF No. 117 at 20-23 (§ V.C.) (citing *Universal Secure Registry v. Apple Inc.*, 10 F.4th 1342, 1357 (Fed. Cir. 2021); *SAP AM., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1168 (Fed. Cir. 2018)).

Finally, Q Tech's reliance on *eCeipt* (ECF No. 125 at 30) is misplaced because that case was decided at the pleading stage. *eCeipt LLC v. Homegoods, Inc.*, No. 19-CV-32-ADA, 2019 WL 10302271, *7 (W.D. Tex. May 20, 2019). Moreover, the claims in *eCeipt* recited improved database systems involving use of customer (i.e., personal) information, including e-mail addresses, which Q Tech contends are not part of its claims. *Id.* at *3-*5; ECF No. 125 at 10, 22.

## IV. Q TECH FAILS TO IDENTIFY ANY TECHNOLOGICAL IMPROVEMENT IN THE CLAIMS

Q Tech's first argument – that the Asserted Claims are eligible because the Asserted Patents were classified by the USPTO as pertaining to "Transmission of Digital Information" – is nonsensical. A patent found ineligible had the same H04L classification as Q Tech's patents. *See* ECF No. 125; Ex. 2 (U.S. Pat. No. 7,802,310) at field (51)); *PersonalWeb*, 8 F.4th at 1312. Q Tech's argument would render all such USPTO-classified applications as patent-eligible.

Next, Q Tech attempts to manufacture an issue of material fact out of four computer-related "problems" that the Asserted Patents are allegedly directed to solving and three "solutions." ECF No. 125 at 8-15. As a threshold matter, it is unclear how each of these "solutions" are either separately or together related to any of the "problems" – or how any of them are related to Q Tech's

5

previously-identified "inventive concept" of information "flow" (which is not itself identified as a solution, but – at best – a vague categorization of the three "solutions"). ECF No. 125 at 11.

This confusion exists because none of these "problems" or "solutions" are ever identified by the Asserted Patents, let alone tethered to the Asserted Claims as they must be under *Alice*. *See Am. Axle*, 967 F.3d at 1292. Q Tech's argument is also dubious because it offers three "solutions" to four "problems." Q Tech cannot manufacture a genuine dispute of material fact through conclusory attorney statements. *See, e.g.*, *Blue Spike, LLC v. Audible Magic Corp.*, No. 6:15-CV-584, 2016 WL 3653516, at *4 (E.D. Tex. May 31, 2016). We address each in turn.

*"Problem" 1*: Unable to show support in the claims or the specification for the "problem" of open URLs, Q Tech instead cobbles together the *Background* section and an Office Action response. ECF No. 125 at 9. But the *Background* is merely a high-level discussion of the state of the art, and, contrary to Q Tech's assertions, the Office Action response nowhere says that "URL-based prior methods carried disadvantages in the form of decreased privacy and security," nor does it mention privacy or security or URLs being public. *Id.*; *see* ECF No. 126-3 at QTCH002896.

*"Problem" 2*: Security is never once mentioned in the claims, specification, or in applicant remarks. Q Tech's response instead makes sweeping conclusions based on a single sentence from an examiner interview summary that was made in the application that led to the '473 patent, six months *after* the '108 patent had issued. ECF No. 126-4 at QTCH002904.

*"Problem" 3*: The claims, specification, and prosecution history never mention exchange of personal information. Q Tech's single reference to the "Description of Related Art" in the '562 Provisional never mentions "personal information" and does not support Q Tech's attorney argument. ECF No. 110-5 at 3. Instead, the cited portion is exactly what it purports to be – a description of related art. *Id.*

6

*"Problem" 4*: There is no reference to efficiency between specific types of digital content in the claims, specification, or prosecution history. ECF No. 126-6. Moreover, "claiming the improved speed or efficiency inherent with applying the abstract idea on a computer" would be insufficient to render eligibility as an improvement to computer functionality. *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1364 (Fed. Cir. 2020) (citation omitted).

*"Solution" 1*: The only "specific structures" identified by Q Tech are a generic "server," "network" and "client[s]." ECF No. 125 at 11. As a matter of law, this general-purpose structure cannot render the claims patent eligible. ECF No. 117 at 4, 20-23 (§§ III.A, V.C.). Q Tech identifies no other claimed structure. Q Tech ignores that human minds have implemented the alleged "closed system" feature, *e.g.,* in a library that restricts access to students or requires a library card to enter.

Unable to point to structure in the claims, Q Tech cites an examiner interview summary in the application that led to the '473 patent, six months *after* the '108 patent had issued. A new concept raised for the first time during prosecution of a later-issued patent and *rejected* by the Examiner cannot be a technical solution embodied by the Asserted Claims. And, as a matter of law, this "closed architecture" concept is unclaimed and therefore "irrelevant as to step 1 or step 2 of the *Mayo/Alice* analysis." *Am. Axle*, 967 F.3d at 1292.

*"Solution" 2*: Q Tech next argues that "sharing a limited set of information between co-located devices" in the form of a "unique ID" is a claimed solution. ECF No. 125 at 12. But Q Tech ignores that humans have shared such "unique IDs" for years. ECF No. 117 at 11-13, 19-20 (§§ V.A., V.B.). Q Tech's lone citation to the '473 patent examiner interview summary fails to manufacture a genuine issue of material fact for the same reason as with "Solution" 1.

*"Solution" 3*: Like "solutions" 1 and 2, "Solution" 3 is entirely attorney argument. The

7

only portion of the intrinsic record cited by Q Tech is Fig. 1 of the Asserted Patents, which shows a diagram with indisputably generic structures: a server," "network" and "client[s]". ECF No. 125 at 13. Libraries have used "unique IDs" to share content stored in their stacks (i.e., "servers") for years. ECF No. 117 at 11-13, 19-20 (§§ V.A., V.B.). Q Tech's attempt to perform a human technique using generic computer hardware cannot confer patent eligibility. *Id.* at 4, 20-23.

Q Tech's assertion that claim 10 illustrates the "altered transactional flow of communication[4]" is without merit. *Id*. at 15-17. As explained above, Q Tech's alleged "problems" and "solutions" are fabricated and, in any event, are not enough to confer patent eligibility.

## V.   Q TECH FAILS TO REBUT THAT CONTENT-SHARING USING A UNIQUE IDENTIFIER IS A KNOWN ABSTRACT CONCEPT

Although Q Tech concludes that "the Defendant fails under Alice Step One to establish that the claims are directed toward an abstract idea," nowhere does Q Tech actually argue that the specific abstract concept identified by Walmart – content sharing using a unique identifier – is anything more than an abstract concept itself. ECF No. 125 at 2.

Moreover, in its Motion, Walmart referred to two real-world examples of content-sharing using a unique identifier: libraries and ticketing systems. Q Tech does not actually rebut the fact that both of these systems demonstrate the underlying abstract concept, but instead attempts to distinguish libraries and ticketing systems because of their purpose of "retrieving a physical item" as opposed to using computer hardware. ECF No. 125 at 22. But that distinction is immaterial; what Q Tech does *not* dispute is that both systems demonstrate that content-sharing using a unique

---

[4] Q Tech cites the applicant's October 21, 2016 Remarks to support the existence of this "flow," but Q Tech concedes that those remarks "only pertain to the generation of the unique ID and scanning of the unique ID." *Id*. at 14, fn. 23 (citing ECF No. 126-6 at QTCH006495-96); *id*. at 19, fn. 31 (citing same). Q Tech concedes that "the patents don't require that the second client first request the shared content directly from the first client when they are nearby before the first client sends the unique identifier." *Id*. at 22.

identifier is an abstract concept that has been in use for decades. And, Q Tech appears to be confusing patent eligibility under Section 101 with prior-art anticipation under Section 102. Walmart is not arguing that libraries and ticketing systems anticipate the Asserted Claims, and Q Tech's discussion about whether these examples "capture" the asserted claims or the claims are "directed" to retrieving a physical item are irrelevant to this analysis. ECF No. 125 at 21-22.

Q Tech also – without any actual support – mischaracterizes how libraries have been performing its claimed process for years in an attempt to manufacture a genuine issue of material fact. As Walmart explained in its Motion, a librarian (first client) can give a patron (second client) a Dewey Decimal number (unique identifier). ECF No. 117 at 11-13 (§ V.A.). Q Tech makes a number of unsupported allegations about the inner workings of libraries based solely on either attorney argument or its own expert's self-serving opinions – neither of which is sufficient to manufacture a genuine issue of material fact. For example, Q Tech provides no support beyond expert opinion for its assertion that the patron must bring the unique identifier back to the librarian (ECF No. 125 at 22) – and indeed such a step is unnecessary, because the patron can access the shared content by going to the card catalogue and/or stacks. Other arguments that Q Tech makes – such as its argument about preserving "anonymity" – similarly fall flat because they fall outside the bounds of what the Claims require. In the preceding example, the Claims do not recite or require anonymity and indeed the Asserted Patents expressly state the opposite: that a first user can communicate the unique identifier directly to the second user. '108 patent at 19:10-14.[5]

## VI. CONCLUSORY EXPERT OPINION AND THIRD-PARTY EVIDENCE CANNOT SAVE Q TECH'S CLAIMS

Q Tech's reliance on its expert, Dr. Akl, to manufacture fact issues falls flat. ECF No. 125

---

[5] Q Tech's other unsupported attempts to distinguish libraries and ticketing systems (ECF No. 125 at 22-23) are equally flawed for similar reasons.

9

at 17-19, 26-28. Whether claims are directed to an abstract idea is a question of law for the Court to decide, not Dr. Akl. *USC IP v. Facebook, Inc.*, 576 F.Supp.3d 446, 457 (W.D. Tex. Dec. 20, 2021 (Albright, J.). Moreover, Dr. Akl's opinions are conclusory and untethered to the evidence. Conclusory expert opinion unsupported by facts cannot manufacture issues of material fact sufficient to survive summary judgment. *K-TEC, Inc. v. Vita-Mix Corp.*, 696 F.3d 1364, 1374 (Fed. Cir. 2012). Walmart's Motion addresses every argument Q Tech now raises in its opposition with respect to expert opinion. ECF No. 117 at 29-33 (§ VIII). Dr. Akl's say-so is not enough to alter Q Tech's claims or manufacture an inventive concept where none exists. Likewise, Q Tech's reliance on lay witness testimony, including the self-serving remarks of its CEO, does not confer eligibility because none of that testimony is a proxy for the claims. Q Tech cites no legal authority to suggest that such lay witness testimony can create a genuine issue of material fact.

Separately, Q Tech argues that because claims of one of the three Asserted Patents overcame a § 101 rejection during prosecution, denial of summary judgment is appropriate. ECF No. 125 at 29. This is legally incorrect because an "Examiner's bare legal conclusion about eligibility does not bind the Court, nor is it sufficient (without more) to demonstrate the existence of a material fact dispute at step two." *See Reputation.com v. Birdeye*, 2022 WL 609161 (D. Del. Jan 31, 2022). Q Tech has failed to show evidence that might raise a genuine issue of material fact that the claims are patent eligible at *Alice* step 2.

### VII. THE ASSERTED CLAIMS FAIL BOTH STEPS OF *ALICE* AND ARE PATENT INELIGIBLE UNDER SECTION 101

Q Tech's alleged inventive concept (the "altered flow" and "specific architecture") is insufficient as a matter of law because it is not recited in the claims and because the claimed method of content sharing using a unique identifier is abstract. This Motion should be granted.

10

| | |
|---|---|
| Dated: July 12, 2023 | Respectfully submitted,<br><br>By: */s/ Kathryn Riley Grasso*<br>Kathryn Riley Grasso<br>Christian Chessman<br>Henry R. Fildes<br>**DLA PIPER LLP (US)**<br>500 Eighth Street NW<br>Washington, DC 20004<br>Tel: (202) 799-4000<br>Fax: (202) 799-5000<br>kathryn.riley@us.dlapiper.com<br>christian.chessman@us.dlapiper.com<br>henry.fildes@us.dlapiper.com<br><br>John M. Guaragna<br>State Bar No. 24043308<br>Zachary A. Loney<br>State Bar No. 24092714<br>**DLA PIPER LLP (US)**<br>303 Colorado St., Suite 3000<br>Austin, TX 78701<br>Tel: 512.457.7125<br>Fax: 512.457.7001<br>john.guaragna@us.dlapiper.com<br>Zachary.loney@us.dlapiper.com<br><br>Jackob Ben-Ezra<br>**DLA PIPER LLP (US)**<br>845 Texas Avenue, Suite 3800<br>Houston, TX 77002<br>Tel: (713) 425-8400<br>Fax: (713) 425-8401<br>jackob.ben-ezra@us.dlapiper.com<br><br>Benjamin Yaghoubian<br>**DLA PIPER LLP (US)**<br>2000 Avenue of the Stars<br>Suite 400 North Tower<br>Los Angeles, CA 90067-4735<br>Tel: (310) 535-3000<br>Fax: 310-595-3300<br>Benjamin.Yaghoubian@us.dlapiper.com<br><br>**ATTORNEYS FOR DEFENDANT WALMART INC.** |

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served on July 12, 2023, with a copy of this document via electronic mail on this same date.

/s/ *Kathryn R. Grasso*
Kathryn R. Grasso

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served on July 12, 2023, with a copy of this document via electronic mail on this same date.

/s/ *Kathryn R. Grasso*
Kathryn R. Grasso